# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17 C 4887 |
| ) | |
| EDWARD J. NOVAK, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Edward Novak, the former chief executive officer of Sacred Heart Hospital, paid kickbacks to physicians for the referral of Medicare and Medicaid patients to the hospital. Under the Anti-Kickback Statute (AKS), 42 U.S.C. § 1320a-7b(b)(2)(A), such payments are unlawful. In March 2015, a jury convicted Novak on several counts of violating the statute, and the Court later ordered Novak to forfeit the Medicare and Medicaid reimbursements obtained from patients referred through kickback-recipient physicians. The government then filed a lawsuit against Novak under the False Claims Act (FCA), 31 U.S.C. § 3729(a)(1), seeking treble damages based on the reimbursements identified in the forfeiture order. Both parties have moved for summary judgment.

## Background

Novak offered and paid kickbacks to physicians who referred Medicare and Medicaid patients to Sacred Heart. After a seven-week trial, a jury convicted Novak of

violations of the AKS and conspiracy to violate the statute. *United States v. Novak*, No. 13 CR 312-1, D.E. 646 (N.D. Ill. Mar. 19, 2015). The Court later ordered Novak to forfeit the amount of Medicare and Medicaid reimbursements obtained through kickbacks. On appeal, Novak challenged the sufficiency of the evidence supporting his conviction, the admission of a co-conspirator's statements, and the constitutionality of the AKS. He did not challenge the forfeiture order. The Seventh Circuit affirmed his conviction. *United States v. Nagelvoort*, 856 F.3d 1117 (7th Cir. 2017).

The government then filed the present civil suit under the FCA, alleging in two counts that the claims submitted to Medicare and Medicaid falsely certified compliance with the AKS. Because the FCA provides for treble damages, the government contends it is entitled to three times the amount Novak was ordered to forfeit, less the amount already forfeited. The government contends that the conviction and forfeiture order resolve the factual issues of this case and that it is entitled to summary judgment. Novak has also moved for partial summary judgment, arguing that the government has failed to present evidence it suffered actual damages from his conduct.

## Discussion

Both parties have moved for summary judgment. To obtain summary judgment, a party must demonstrate that there is no genuine dispute about a material fact; that is, that no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court draws all reasonable inferences in the nonmoving party's favor. *Id.* at 253.

I.  **Government's motion for summary judgment**

To prove liability on a claim under the FCA, the government must establish that

2

the defendant made, used, or caused to be made or used a record or statement to get a claim against the United States paid or approved; the record or statement and the claim were false or fraudulent; and the defendant knew this. *See* United States' Reply in Support of Summ. J. at 5 (citing 31 U.S.C. §§ 3729-3733).

The government makes a single argument in support of summary judgment on liability: it contends that that the doctrine of issue preclusion (collateral estoppel) bars Novak from contesting liability. Specifically, the government contends that "Novak was found guilty of the elements of a violation of section 3728(a)(1)(A) of the False Claims Act for paying kickbacks and submitting claims to Medicare and Medicaid for the patients subject to the kickbacks" and that "[h]e is estopped from denying liability under federal common law estoppel provisions . . . ." United States' Corrected Mem. in Support of Summ. J. (Govt's Mem.) at 5. It relies on a provision of the False Claims Act that states:

> [A] final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730.

18 U.S.C. § 3731(e) (cited in Govt's Mem. at 4).

The basic problem with the government's argument is that the charges on which Novak was convicted did not "charg[e] fraud or false statements." Rather, they charged violations of the Anti-Kickback Statute. The elements that the jury had to find did not include false statements or fraud. Nor did they include determination of Novak's responsibility for submission of claims to the government. Rather, the instructions submitted to the jury in the criminal case

3

required the jury to find that Novak knowingly and willfully paid remuneration to or for the benefit of physicians and that he did so to induce referral of persons to Sacred Heart Hospital to provide services that may be paid in whole or in part under Medicare or Medicaid. Under section 3731(e), Novak cannot relitigate the essential elements of his AKS convictions, but those are not, as the government contends, the elements of a False Claims Act violation.

There may be other arguments the government could make in support of summary judgment, but it has not made them. The argument summarized above is the only argument the government made. In short, the government has made no argument showing that the essential elements of a False Claims Act violation were found in Novak's criminal case. Thus the government is not entitled to summary judgment on the question of liability. In the absence of a finding on liability, the Court declines to address at this time the government's request for summary judgment on the amount of loss based on the forfeiture judgment in the criminal case.

## II.     Novak's motion for summary judgment

Novak has also moved for summary judgment. He argues that the proper measure of FCA damages requires the government to introduce evidence of its spending *and* the value of the medical services that Sacred Heart provided in return. Novak contends that the government has provided no evidence of the latter and that as a result he is entitled to summary judgment. Even though the Court has declined to address the government's request for summary judgment on damages, because Novak contends that the government is missing evidence on an essential element of its claim,

4

the Court will address Novak's argument to the extent it is able to do so.

Novak's argument rests on the "net loss" approach to calculating damages. In *United States v. Anchor Mortgage Corp.*, 711 F.3d 745 (7th Cir. 2013), the Seventh Circuit held that the calculation of FCA damages required the net loss approach, because the Supreme Court used this approach in *United States v. Bornstein*, 423 U.S. 303, 316 n.13 (1976), and because civil damages are traditionally assessed based on net losses. *Anchor Mortgage*, 711 F.3d at 749-50. Novak also contends that the net loss approach comports with the plain text of the FCA and with the common-law approach to calculating damages for fraud claims.

The government argues that it does not need to deduct the value of the services it obtained from the amount it paid out. In *United States v. Rogan*, 517 F.3d 449 (7th Cir. 2008), the Seventh Circuit affirmed trebled damages based on the full amount of Medicare reimbursements submitted to the defendant, who had obtained Medicare patients in violation of the AKS. *Id.* at 452-53. The Seventh Circuit held that the district court properly concluded that the government was entitled to "the entire amount" of the falsely-obtained reimbursements, even though "most of the patients for which claims were submitted received some medical care—perhaps all the care reflected in the claim forms." *Id.* at 453. *Anchor Mortgage* was decided after *Rogan* but does not discuss it.

Novak argues that *Rogan* does not bind the Court. First, he contends that *Rogan* is inconsistent with *Bornstein*, *Anchor Mortgage*, and the text of the FCA—all of which, he contends, require the Court to consider the value of the services the government obtained when calculating damages arising from false claims. The Court disagrees. *Rogan* is consistent with the authorities that Novak cites because it stands for the

5

proposition that, in certain circumstances, a defendant's false claim renders the services the defendant subsequently provided worthless. Thus, even if the Court applies the net loss calculation, there would be nothing of value to subtract from the Medicare reimbursements that Novak obtained. Contrary to Novak's assertion, there is no tension between this approach and "the well-settled meaning of the common-law terms" that the Supreme Court endorsed in *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1999 (2016). The Court concludes only that there is nothing to deduct from the amount the government provided in reimbursements, not that an approach to calculating damages outside of the common law is required.

What is it about a defendant's false claim that can render worthless the services the government obtained? The government contends this occurs when its outlay of funds does not produce any benefit that redounds to the government itself, such as "when it subsidiz[es] health care provided to third parties[.]" United States' Mem. in Opp. to Cross-Mot. for Partial Summ. J. at 4. Novak rightly disputes this contention. In FCA cases in which the government was spending on behalf of a third party beneficiary, courts may subtract the value of services properly rendered from what it spent.[1] In *United States v. Bourseau*, 531 F.3d 1159 (9th Cir. 2008), a Medicare overbilling case, the Ninth Circuit affirmed damages as the difference between the amount the

---

[1] The Court employs "third-party beneficiary arrangement" as shorthand to contractual arrangements in which the government purchases a service for the benefit of another party. For instance, "Medicaid is a contract between a service provider and the government, in which the Medicaid recipient is a third-party beneficiary." *Spectrum Health Continuing Care Grp. v. Anna Maria Bowling Irrecoverable Tr.*, 410 F.3d 304, 315 (6th Cir. 2005). *See also U.S. v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1279 (D.C. Cir. 2010) (describing such arrangements as "programs designed to benefit third-parties rather than the government itself").

6

government actually reimbursed and the amount properly reimbursed—not the entirety of the reimbursement.  *Id.* at 1163-64, 1172-73.  *See also United States ex rel. Tyson v. Amerigroup Ill., Inc.*, 488 F. Supp. 2d 719, 739 (N.D. Ill. 2007); *United States v. Phung*, No. CIV.-09-772, 2011 WL 3584812, at *4 n.12 (W.D. Okla. Aug. 15, 2011).  Even though the government had spent on behalf of a third-party beneficiary, these courts considered the value of the services rendered.

Thus a third-party beneficiary arrangement, standing alone, is an insufficient explanation for why courts decline to deduct the value of services provided from damages in certain cases.  But circuit courts have repeatedly affirmed that the cost to the government of the arrangement should constitute the full extent of damages in an FCA claim in certain circumstances.  In some instances, the services performed pursuant to a false claim may be worthless because the third-party beneficiary arrangement was originally intended to provide an intangible benefit to the government that would be impossible to value.  *See United States ex rel. Longhi v. Lithium Power Techs.*, 575 F.3d 458, 473 (5th Cir. 2009) (the defendant's falsified application for a research grant deprived the government of the "intangible benefit of providing an 'eligible deserving' business with the grants").  In others, the defendant's false claim may so deceive the government that it ends up obtaining a different benefit from what it sought through its spending.  *See United States ex rel. Feldman v. van Gorp*, 697 F.3d 78, 90-91 (2d Cir. 2012) (the defendant's use of research funds was so different from what was described in the falsely-obtained research grant that "the government bargained for something qualitatively, but not quantifiably, different from what it received"); *United States v. TDC Mgmt. Corp.*, 288 F.3d 421, 423, 428 (D.C. Cir. 2002)

(the defendant used a research grant not to support minority enterprises attempting to bid on transportation projects, as originally intended, but to seek a financial stake in the projects on which it was supposed to advise).

In this case, the Court relies on another rationale: damages are equivalent to the entirety of what the government paid out, because Novak's false claims obscured that he (or, more specifically, Sacred Heart Hospital) was not eligible to obtain reimbursement in the first place. The Seventh Circuit endorsed this rationale in *Rogan*, emphasizing that Medicare spending was conditioned upon compliance with the AKS. *Rogan*, 517 F.3d at 453. Under Medicare, the Seventh Circuit held, "[t]he government offers a subsidy . . . with conditions. When the conditions are not satisfied, nothing is due." *Id.* By obscuring that the provider was not eligible to obtain the Medicare payments in the first place, the defendant damaged the government to the full extent of the payments provided. *Id.* As the D.C. Circuit has stated, a defendant who "sought a government subsidy to which it was not entitled" must "repay the full amount of the claims as damages[.]" *Sci. Applications Int'l Corp.*, 626 F.3d at 1279. Contrary to Novak's contention, the *Rogan* damages rule does not rest entirely on the premise that the government receives no benefit from third-party beneficiary arrangement. Therefore, the Court's holding is not at odds with the common law premise that a promisee enjoys benefits from a third-party beneficiary relationship.

Other courts likewise have affirmed damages equivalent to the full amount of the government's third-party beneficiary arrangement when a false claim obscured the defendant's ineligibility to receive the funds. *United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 386-87 (4th Cir. 2015) (a hospital submitted claims for Medicare

8

reimbursement while falsely representing that it complied with the AKS, a condition for obtaining such reimbursements); *United States v. Anghaie*, 633 F. App'x 514, 519 (11th Cir. 2015) (a company fraudulently represented its eligibility for a research grant that it could not have otherwise obtained without the false claims); *United States v. Mackby*, 339 F.3d 1013, 1018 (9th Cir. 2003) (the defendant fraudulently used the license information of another doctor to provide therapy services covered by government insurance he was not licensed to perform on his own).

Novak presents several additional arguments against the application of *Rogan*. First, Novak argues that *Rogan* is distinguishable, because the defendant in that case wanted to exclude evidence about the value of the medical services he rendered pursuant to kickbacks, whereas Novak wants to introduce such evidence. *Rogan*, 517 F.3d at 454. This does not matter; the Seventh Circuit has clearly stated that such evidence is not relevant to the damages analysis in a case like this one: "[we do not] think it important that most of the patients for which claims were submitted received some medical care—perhaps all the care reflected in the claim forms." *Id.* at 453. *Rogan* establishes that the relevant question in a case like the present one is whether the false claims obscured the defendant's ineligibility for federal funds, not whether the defendant can show that the government obtained some of the services for which it paid.

Next, Novak tries to distinguish *Rogan* from this case by noting that the two cases involved different theories of FCA liability. In *Rogan*, the government employed the common-law theory of false certification. Here, the government is relying on 42 U.S.C. § 1320a-7b(g), a codification of the common-law theory of false certification

9

that was enacted after *Rogan* was decided. *See United States ex rel. Kester v. Novartis Pharmaceuticals Corp.*, 41 F. Supp. 3d 323, 333-34 (S.D.N.Y. 2014) (reviewing legislative history to conclude that section 1320a-7b(g) codifies the false-certification theory). Novak does not explain, however, how this distinction matters.

Finally, Novak argues Congress rejected an FCA amendment that would have codified the government's damages standard, from which he concludes Congress rejected this standard. Even if the Court were to give weight to Novak's legislative history argument, *cf. Matter of Sinclair*, 870 F.2d 1340, 1343 (7th Cir. 1989) (expressing "skepticism" about the use of legislative history), the fact that Congress did *not* adopt a statutory amendment is unconvincing evidence—there many reasons why it may have done so besides disfavoring the rule the amendment would have codified.

For these reasons, the Court denies Novak's motion for summary judgment. Under *Rogan*, a fraud that conceals an individual's ineligibility to receive government spending intended for the benefit of third parties entitles the government to the full amount of the falsely-obtained payments. The government was not obligated to present evidence of the value of the services it received in connection with the alleged false claims.

Novak also makes arguments regarding the claimed impropriety of imposition of statutory penalties, but given the Court's denial of the government's summary judgment motion, ruling on that issue would be premature.

**Conclusion**

For the foregoing reasons, the Court denies both parties' motions for summary judgment [dkt. nos. 24, 27]. The case is set for a status hearing on September 13, 2018

at 9:30 a.m. to schedule any further proceedings required to bring the case to a conclusion.

Date: September 4, 2018

_____
MATTHEW F. KENNELLY
United States District Judge